Charles H. Landwer,
27W165 Schick Road
Hanover Park, Illinois
60133-6719
charleslandwer@gmail.com
312.590.8028

RECEIVED
9/21/2026
EMS
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES H. LANDWER,<br>Plaintiff,<br><br>vs.<br><br>AMERICAN – AMICABLE LIFE INSURANCE COMPANY OF TEXAS,<br>Defendant,<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br>Defendant,<br><br>MUTUAL OF OMAHA INSURANCE COMPANY,<br>Defendant,<br><br>ETHOS LIFE INSURANCE,<br>Defendant, | Case Number BC<br>1:26-cv-11494<br>Judge Edmond E. Chang<br>Magistrate Judge Heather K. McShain<br>RANDOM / Cat 2<br><br>COMPLAINT AT LAW<br><br>Jury Trial Demanded |

JOHN DOE I, (a.k.a. Ryan Conrad)
Defendant,

JOHN DOE II, (a.k.a. Brian Cooper),
Defendant,

JANE DOE I, (a.k.a. Ms. Nancy),
Defendant.

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Charles H. Landwer, pro se, and files the Plaintiff's Complaint At Law pursuant to the Federal Statutes as set forth below against the Defendant(s), American – Amicable Life Insurance Company of Texas, Transamerica Life Insurance Company, Mutual of Omaha, Ethos Life Insurance, John Doe I (a.k.a. Ryan Conrad), John Doe II (a.k.a. Brian Cooper) and Jane Doe I (a.k.a. Ms. Nancy).

In support of the Plaintiff's Complaint At Law, the Plaintiff states as follows:

## JURISDICTION AND VENUE

1) This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2).

2) Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), and 47 U.S.C. § 227(g)(4). A substantial part of the acts, events or omissions giving rise to the claims alleged in this Complaint occurred in the Northern District of Illinois.

3) Venue is proper in the Northern District of Illinois, because the Defendant(s):

(a) is/are authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

(b) does substantial business within this district:

(c) is/are subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,

(d) the injury to the Plaintiff occurred within this judicial district.

4) The Court has federal question jurisdiction over the TCPA claims. Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740 (2021).

5) The Plaintiff has notified the Federal Communications Commission of this civil action.

## PARTIES

6) The Plaintiff is a natural person, an individual, who maintains a residential address of 27W165 Schick Road, Hanover Park, DuPage County, Illinois 60133-6719 and currently receives United States Mail at P. O. Box 91, Streamwood, Illinois 60107-0091.

7) The Defendant, American – Amicable Life Insurance Company of Texas, ("American – Amicable"), is a Texas Company, the American-Amicable Life Insurance Company of Texas is a progressive special markets insurer. The Company offers innovative life insurance and annuity products developed to target the individual needs of protection, wealth creation and estate preservation, that maintains a Mail Drop, at P.O. Box 2549 Waco, Texas 76702-2549 and a Physical Address at 425 Austin Avenue, Waco, Texas 76701-2127 and a Corporate Registered Agent of Amber Adams, located at P. O. Box 2549, Waco, Texas 76702-2549.

8) The Defendant, Transamerica Life Insurance Company, ("Transamerica") is a major U.S. life insurance and financial services provider, operating as the primary U.S. subsidiary of the global insurance group Aegon. Transamerica offers a diverse range of insurance and retirement solutions, including: Life Insurance, Retirement & Annuities and Employee Benefits. They maintain a Company office at 6400 C Street SW Cedar Rapids, Iowa 52499.

9) The Defendant, Ethos Life Insurance Company ("Ethos"), is a digital life insurance agency that sells policies from partner carriers, known for its fast, no-medical-exam application process. It's not an insurance company itself—it's a technology platform and broker that connects applicants with insurers. The Better Business Bureau and Consumer Affairs host complaints about aggressive sales calls from agents, difficulties

canceling policies, and billing issues. They maintain a Company office at 1606 Headway Circle #9013 Austin, Texas 78754.

10) The Defendant, Mutual of Omaha Insurance Company ("Omaha"), is an American Fortune 500 mutual insurance and financial services company based in Omaha, Nebraska. Founded in 1909, as Mutual Benefit Health & Accident Association, Omaha is a financial organization offering a variety of financial services, including Medicare Supplement, life insurance, long-term care coverage and annuities, as well as group coverage including life, disability and 401(k). Omaha maintains a Physical Address at 3300 Omaha Plaza, Omaha, Nebraska 68175 and a Registered Agent, Nancy L. Crawford and a Registered Office Address of 3300 Omaha Plaza, Omaha, Nebraska 68175.

11) The Defendant, John Doe I, (a.k.a. Ryan Conrad) ("John Doe 1"), is a telephone marketer, for Ethos. The Defendant, Ethos manages and employs/employed agents, sub-agents and marketers to place telephone sales calls to prospective clients identified by the Defendants, American – Amicable; Transamerica and Omaha Company.

12) The Defendant, John Doe II, (a.k.a. Brian Cooper) is a sub-agent of the Defendant, Ethos. The Defendant, Ethos manages and employs/employed agents, sub-agents and marketers to place telephone sales calls to prospective clients identified by the Defendants, American – Amicable; Transamerica and Omaha Company.

13) The Defendant, Jane Doe I, (a.k.a. Ms. Nancy) is a sub-agent of the Defendant, Ethos. The Defendant, Ethos manages and employs/employed agents, sub-agents and marketers to place telephone sales calls to prospective clients identified by the Defendants, American – Amicable; Transamerica and Omaha Company.

## The Telephone Consumer Protection Act

14) The Telephone Consumer Protection Act, TCPA, enacted in 1991, amended the Communications Act of 1934 by adding 47 U.S.C. § 227, which requires the Federal Communications Commission ("FCC") to... initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. . . . The regulations required by [the TCPA] may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and part thereof available for purchase. If the Commission determines to require such a database, such regulations shall- ... (F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database . .. . 47 U.S.C. § 227(c)(l) and (c)(3).

15) In 1992, the FCC promulgated rules pursuant to the TCPA.

16) On June 26, 2003, the FCC revised its rules and promulgated new rules pursuant to the TCPA. These new rules established a "do not call" registry (the "National Do Not Call Registry" or "Registry") of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

17) Sellers, telemarketers, and other permitted organizations can access the Registry over the Internet at telemarketing.donotcall.gov to download the registered numbers.

18) A relevant FCC Do-Not-Call Rule, 47 C.F.R. § 64.1200(c), provides in part: "(c) No person or entity shall initiate any telephone solicitation [as defined in paragraph (f)(14) of this section] to ... (2) A cellular telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." The Do-Not-Call list is maintained at https://www.donotcall.gov and is available for telemarketers to check telephone numbers.

19) The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), respectively, provide in part: "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase

or rental of, or investment in, property, goods, or services, which is transmitted to any person ..."

20) The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(b)(l)(B) and 47C.F.R.§ 64.1200(a)(3), respectively, provide that it is unlawful for a person to: "Initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call ... [is specifically exempted by rule or order]."

21) The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful for any person to: "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using… an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service…" Relevant FCC Rule 47 C.F.R. § 64.1200(a)(1)(iii) similarly prohibits persons from initiating calls to a cellular telephone using an artificial or prerecorded voice without the prior express consent of the called party. Relevant FCC Rule C.F.R. § 64.1200(a)(2) further prohibits persons from initiating or causing to be initiated calls that include or introduce an advertisement or constitute telemarketing to cellular telephones using an artificial or prerecorded voice without the prior express written consent of the called party. There is no difference between a cellular based telephone or a landline-based telephone when making a telemarketing telephone call. The FCC rules need to be followed so as to

assure the telephone calls are being made pursuant to the Telephone Consumer Protection Act.

22) The TCPA, 47 U.S.C. § 227(d)(3)(A) and FCC Rule, 47 C.F.R. § 64.1200(b)(1), provide in part that "all artificial or prerecorded voice telephone messages shall… at the beginning of the message, state clearly, the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."

23) The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), respectively, provide that it is unlawful for a person "with the intent to defraud, cause harm, or wrongfully obtain anything of value" to cause any caller identification service to transmit or display "misleading or inaccurate caller identification information."

24) Congress enacted the TCPA to prevent unsolicited calls to consumers' cellphones. "Voluminous consumer complaints about abuses of telephone technology - for example, computerized calls dispatched to private home - prompted Congress to pass the TCPA," Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

25) Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive calling practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to... cellular... telephone numbers often impose a cost on the called party (...[where, e.g.] cellular users must pay for each incoming call...)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201at *18 (Nov. 15, 1991).

26) When it passed the TCPA, Congress intended to provide consumers a choice as to how callers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub L. No. 102-243, § 11.

27) The Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance call," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy..." Pub L. No. 102-243, §§ 12-13.

28) The TCPA further provides an affected individual can bring an action to recover for actual monetary loss or receive five hundred (500) dollars damages for each violation, or both. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence. 47 U.S.C. § 227(g)(1). This Court may award other ancillary relief to remedy injuries caused by the Defendants violations of the TCPA.

## Nature Of The Case

29) In an effort to promote their Life Insurance coverage products, the Defendant American – Amicable; Transamerica and Omaha contracted with the Defendant, Ethos Company, whom, engaged in an especially invasive form of advertising: the transmission of prerecorded messages through unsolicited robocalls - an automated telephone call, as defined by 47 U.S.C. § 227(a)(1), which delivers a recorded message, typically on behalf of a telemarketing company - to the cellular telephones of individuals throughout the country, including the Plaintiff.

30) The Defendant, American – Amicable; Transamerica and Omaha are liable for these illegal calls, even though it did not initiate them. The Defendant has had several complaints filed and has received negative feedback and reviews on the Internet for the same type of conduct, complained of by the Plaintiff in the Plaintiff's Complaint At Law.

31) The Defendants, American – Amicable; Transamerica and Omaha contracted with the Defendant, Ethos Company, to accept business derived from these illegal calls, thus ratifying the illegal calls that are made by and authorized by agents, sub-agents and marketers.

32) The Defendant, American – Amicable; Transamerica and Omaha, have expressly or through conduct/omission, authorized agents, sub-agents and marketers to use their Company Names during telemarketing, thus giving the outward impression that the telemarketers are the Defendant's, American – Amicable; Transamerica and Omaha authorized agents, sub-agents or marketers.

33) The Plaintiff registered his cellular phone number 312.590.8028 on the National Do Not Call Registry in May of 2018 and the Plaintiff recently renewed the registration in March of 2021.

34) At all times relevant, the Plaintiff, was the sole subscriber, owner and operator of the cellular phone number ending in 8028. The Plaintiff was issued the phone number ending in 8028 in April of 2018 and has maintained that phone, without interruption, since April 2018.

35) The advancements in telephone dialing technology by the 1980's and 1990's made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. These are the types of activities that, the Defendant, American – Amicable; Transamerica and Omaha illegally engaged in and practiced.

36) The Federal government and numerous states, including Illinois, have enacted legislation to combat these widespread telecommunication abuses. As the United Sates Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls... Banning such automated or prerecorded marketing telephone calls to the cellular telephone, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

37) As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or

prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

38) The TCPA provides for injunctive relief and the greater of actual damages or five hundred (500) dollars per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

39) However, as set forth in more detail below, the Defendant, American – Amicable and the Defendant Transamerica has authorized agents, sub-agents and marketers that failed to obtain the 'called parties' prior express consent before calling them. By making these unsolicited robocalls to individuals' cellular telephones without the individuals' prior express consent, the Defendant, American – Amicable; Transamerica and Omaha have violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 et seq., and the Automatic Telephone Dialers Act, (the "ACT") as well as consumers' privacy rights.

40) In an attempt to circumvent the TCPA and the ACT, the Defendant, American – Amicable; Transamerica and Omaha authorized the agents, sub-agents and marketers, to utilize computer-based technology to make prerecorded voice calls to the Plaintiff promoting the Defendant, American – Amicable; Transamerica and Omaha Insurance products. This technology utilizes a random number, computer generated by the area the Defendant, American – Amicable; Transamerica and Omaha wanted the agents,

sub-agents and marketers to target. The computer used a technology that utilized a technique referred to in the industry as "Neighborhood Spoofing," this technique masks the true number the call originated from and instead shows a local number on the called parties "Caller Identification."

41) When the called party answered the telephone call, a pre-recorded message informs the called party that they have been chosen because they had completed or performed some act in the past that qualifies them for some type of discount or reduced charge. The Defendant instructed their agents, sub-agents and marketers to inform the called party that, *"... based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense. Are you between the ages of 50 and 80 years old?"*

42) The Defendant, Ethos Company, as an experienced telemarketer - through agents, sub-agents and marketers - knew or should have known, that they were prohibited by the TCPA and the ACT from contacting consumers on the National Do Not Call Registry by calling their cellular telephones with automated and prerecorded voice calls without the consumers' prior express consent. These actions were in direct violation of the TCPA and the ACT.

43) The Plaintiff never consented in writing, authorized, desired, or permitted the Defendant Ethos Companies agents, sub-agents and marketers to make the prerecorded voice calls alleged herein to his cellular telephone number, 312.590.8028.

44) The Defendant, Ethos Company, by making such unauthorized prerecorded voice calls to the Plaintiff's cellular telephone, agents, sub-agents and marketers caused Plaintiff actual, concrete harm, including aggravation, nuisance, intrusion upon seclusion, and invasion of his privacy. These actions were in direct violation of the TCPA and the ACT.

45) Through this action, the Plaintiff seeks redress for the Defendant, American – Amicable; Transamerica and Omaha, agents, sub-agents and marketers' violations of the TCPA and the ACT and for willfully and knowingly violating Plaintiff's privacy rights.

**American – Amicable; Transamerica and Omaha Business Practices**

46) The Defendants utilizes "Stake Holders". The Defendants define "Stake Holders" as employees, agents, sub-agents, marketers, administrators, affiliates, clients and trading partners. These "Stake Holders" are used in various capacities to promote the Defendant's offering Life Insurance coverage products.

47) The Defendants, American – Amicable; Transamerica and Omaha, have a contractual relationship with, the Defendant, Ethos, whose agents, sub-agents and marketers contact prospective customers for the Defendant, American – Amicable; Transamerica and Omaha, Life Insurance coverage products and attempt to market and sell the Defendant's Life Insurance coverage products. This contractual relationship with the Defendant, Ethos, and the agents, sub-agents and marketers provides actual and apparent authority.

48) The Defendant, Ethos, has authority and continues to maintain authority over the agents, sub-agents and marketers that market and sell the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance coverage products. This authority creates a liability that the Defendants, American – Amicable; Transamerica and Omaha, bears for the actionable conduct of the agents, sub-agents and marketers based on the contractual relationship between the two parties. The agents, sub-agents and marketers were working under the direct supervision of the Defendant, Ethos. They were instructed regarding the timing, quantity and geographical location of the robocalls.

49) The Defendants, American – Amicable; Transamerica and Omaha, are vicariously liable for the actions of the agents, sub-agents and marketers because these actions were authorized, approved and acquiesced to, by the Defendants, American – Amicable; Transamerica and Omaha. The harm to the Plaintiff was foreseeable and these actions

were committed with the intent of furthering the objective of selling the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance coverage products.

50) While sometimes called "imputed liability," imputed liability is an attachment of responsibility to a person for harm or damages caused by another person in either a negligence lawsuit or criminal prosecution. Thus, an employer of an employee who injures someone through negligence while in the scope of employment (doing work for the employer) is vicariously liable for damages to the injured person. The Defendants, American – Amicable; Transamerica and Omaha, in the present matter, are liable for the illegal actions of the Defendant, Ethos. Ethos, agents, sub-agents and marketers, who were acting under the authority, direction and supervision of the Defendants, American – Amicable; Transamerica and Omaha Defendant.

51) The Defendant, Ethos, authorized the agents, sub-agents and marketers to use the American – Amicable; Transamerica and Omaha sales scripts which were developed over many years of use and refinement by American – Amicable; Transamerica and Omaha and its former and current Stake Holders.

52) The Defendant, Ethos, authorized the agents, sub-agents and marketers to use the Defendants, American – Amicable; Transamerica and Omaha of Texas, trade name to facilitate the marketing and selling of Life Insurance products.

53) The Defendants, American – Amicable; Transamerica and Omaha, authorized the agents, sub-agents and marketers to use the American – Amicable; Transamerica and Omaha proprietary information when making marketing calls. This marketing information includes customers billing information, health maintenance history and information about patients/customers and their health and pre-existing conditions through their affiliation with the Medical Information Bureau located at 50 Braintree Hill Park, Suite 400, Braintree, Massachusetts 02184-8734.

54) The Defendant, Ethos, authorized the agents, sub-agents and marketers to use the American – Amicable; Transamerica and Omaha proprietary information when making marketing calls. This information included but was not limited to databases of prior contacts with prospective customers.

55) The Defendant, American – Amicable; Transamerica and Omaha, authorized the agents, sub-agents and marketers to use the American – Amicable; Transamerica and Omaha proprietary information and databases which allowed the agents, sub-agents and marketers access to quotes in real time when conducting lead generation, sales calls and marketing calls. The information available to the Defendant, Ethos, agents, sub-agents and marketers was information not available to others who were not-affiliated with the Defendants, American – Amicable; Transamerica and Omaha.

56) The Defendant, Ethos, paid an additional fee to the authorized agents, sub-agents and marketers to make phone calls during the hours of 8 a.m. until 8 p.m. CST. Several of the authorized agents, sub-agents and marketers are located overseas in the Philippines and India. The time difference around twelve hours for CST. If calls were going to be placed between the hours of 8 a.m. and 8 p.m. CST, the calls would be placed between 8 p.m. and 8 a.m. CST. The agents, sub-agents and marketers that place calls during those hours require an additional fee for working through their night.

57) The Defendant, Ethos, instructed its agents, sub-agents and marketers to make phone calls to mature neighborhoods that historically have older residents. The older residents are more sensitive to expenses and the need for final expense insurance coverage are advantageous places to sell their Life Insurance coverage products. The Defendant, Ethos, instructed its agents, sub-agents and marketers to place calls to older people encouraging them to purchase the Defendant's, American – Amicable; Transamerica and Omaha Life Insurance coverage products.

58) The Defendant, American – Amicable, completely understands who their ideal customers are and instructs their agents, sub-agents and marketers to target these primarily older customers for their services through the techniques the Defendant, American – Amicable, has found productive in the past.

59) The Defendant, Ethos, agents, sub-agents and marketers use techniques, recommended, approved and ratified by the Defendants, American – Amicable; Transamerica and Omaha, such as placing calls to prospective customers whose numbers appear on the "National Do Not Call Registry"; utilizing "Spoofing" and "Neighborhood Spoofing"; use of "robocalls"; use of "Automatic Telephone Dialers" and use of "prerecorded voices calls," to entice their ideal customer to answer the telephone call. The Defendant, Ethos, agents, sub-agents and marketers uses these techniques to have the called party listen to the sales pitch and accept the services the Defendant, Ethos were offering on behalf of the Defendants, American – Amicable; Transamerica and Omaha.

60) The Defendants, American – Amicable; Transamerica; Omaha and Ethos are registered to conduct business in the State of Illinois. The techniques that are utilized, calling numbers that appear on the "National Do Not Call Registry"; "Spoofing"; "Neighborhood Spoofing"; "robocalls"; "Automatic Telephone Dialers" and "prerecorded voices calls," are in direct violation of the TCPA and the ACT.

61) The Defendant, American – Amicable; Transamerica; Omaha and Ethos, have given their agents, sub-agents and marketers authority to use its tradename, approved scripts and proprietary pricing and product information. The agents, sub-agents and marketers acted pursuant to a valid agency theory - actual authority, apparent authority, ratification. The actual authority is because the Defendants, American – Amicable; Transamerica and Omaha, have and maintained control over the timing, quantity and

geographic location of the agents, sub-agents and marketers coordinated, unauthorized robocalls.

62) The Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents and marketers have actual authority. A principal/agent relationship exists. The Defendant, Ethos, controlled and had the right to control the agents, sub-agents and marketer's conduct. The conduct of the agents, sub-agents and marketers fell within the scope of the agency.

63) The apparent authority arises out of the agents, sub-agents and marketers, illegal robocalls calls to advertise and solicit the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance services to those individuals the Defendant, Ethos has identified as their ideal customer. The Defendants, American – Amicable; Transamerica and Omaha, gave authority to the Defendant, Ethos, agents, sub-agents and marketers to use its tradename, approved scripts, and proprietary pricing and product information when contacting prospective customers for the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance services in an attempt to market and sell the Life Insurance products.

64) The Defendant, Ethos, accepted the Plaintiff, Charles H. Landwer, as a client and the Defendant received a benefit from the agents, sub-agents and marketers unauthorized

and illegal calls. The Defendant, Ethos, now believed they had the Plaintiff as a customer of the Defendants American – Amicable; Transamerica and Omaha.

**Defendants American – Amicable; Transamerica and Omaha Business Practices**

65) The Defendants, American – Amicable; Transamerica and Omaha are businesses duly registered with the Illinois Department of Insurance, in the business of providing Life Insurance products to consumers.

66) In an effort to generate sales leads, the Defendant, Ethos, initiates thousands of outbound telephone calls that deliver artificial or prerecorded voice messages ("robocalls") to residential and/or cellular telephone numbers of residents of the United States. The Defendants, American – Amicable; Transamerica and Omaha, have a contractual relationship with the agents, sub-agents and marketers of Ethos to contact prospective customers of the Defendants, American – Amicable; Transamerica and Omaha and attempt to market and sell the Defendants, American – Amicable; Transamerica and Omaha Life Insurance products.

67) The Defendant, Ethos, agents, sub-agents and marketers' initiates calls to residential telephone lines and/or cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties.

68) The Defendant, Ethos, robocall campaigns advertise the Defendant, American – Amicable Life Insurance products. The Defendant, Ethos, agents, sub-agents and marketers make telephone calls to prospective customers of the Defendants, American – Amicable; Transamerica and Omaha Insurance products. These calls are often made in violation of the TCPA and the Act.

69) From at least June of 2022 through late 2026, the Defendant, Ethos, conducted their robocall business through agents, sub-agents and marketers. From January 1, 2022, to at least September 15, 2026, the Defendants, American – Amicable; Transamerica and Omaha, directly participated in and controlled the day-to-day operations of the third-party provider, the Defendant, Ethos, who placed tens of thousands of robocalls.

70) The Defendant, Ethos, agents, sub-agents and marketers, in generating leads, have placed tens of thousands of abusive robocalls to the residential and/or cellular telephone numbers of consumers.

71) Although the Defendant, Ethos, agents, sub-agents and marketers are aware of the various federal telemarketing laws intended to protect the privacy of consumers from unwanted and harassing phone calls, the Defendant Ethos, agents, sub-agents and marketers willfully initiate calls to consumers in disregard for such laws. When one is engaged in a business and purchases, sets-up and deploys the telemarketing equipment in an illegal manner, they need to be held responsible as to prevent others from falling

victim to these illegal tactics, which include, invasion of privacy, harassment, and economic harm designed to scam consumers.

72) The Defendant, Ethos, agents, sub-agents and marketers initiate telephone calls using artificial or prerecorded voices to deliver messages that fail to clearly identify, at the beginning of the message, the business, individual, or other entity responsible for initiating the call.

73) In many instances, consumers who answer calls initiated by the Defendant, Ethos, agents, sub-agents and marketers are greeted by automated, prerecorded voice messages. For example, many of the calls the Defendant's agents, sub-agents and marketers initiate are related to the Defendant, American – Amicable; Transamerica and Omaha Life Insurance products, one message used by the Defendant's agents, sub-agents and marketers' states,

> "Hi, this is Nancy. I'm with Ethos. How are you doing today?
> ...
> Oh, I'm doing great. Thank you so much for asking. Okay, I'm with Ethos, and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense.
>
> Are you between the ages of 50 and 80 years old?"

74) In many instances, Defendant, Ethos, agents, sub-agents and marketers initiate outbound telephone solicitations to telephone numbers registered on the National Do

Not Call Registry or to telephone numbers registered on state-specific do-not-call registries.

75) The Defendant's agents, sub-agents and marketers placed an outbound telephone solicitation to the Plaintiff whose number is on the National Do Not Call Registry on Friday, 11 September 2026 at 7:37 p.m. CST, from a 'Spoofed' number of 520.222.7301, the calls duration was one hour, fourteen minutes and thirty-two seconds (1:14:32).

76) In order to continue to perpetuate their illegal conduct, the Defendant, Ethos, agents, sub-agents and marketers takes and/or took steps to avoid being identified, including failing to transmit accurate caller identification information. For example, the Defendant, Ethos, agents, sub-agents and marketers often engaged in the practice of "spoofing," whereby they knowingly transmitted misleading or inaccurate telephone numbers through the caller identification service.

77) The Defendant, Ethos, agents, sub-agents and marketers often replaced their actual phone number with a phone number with the same area code and prefix of the call recipient to mislead the recipient into believing the call is coming from someone local and known to the recipient. The techniques that are utilized, calling numbers that appear on the "National Do Not Call Registry"; "Spoofing", "Neighborhood Spoofing"; "Robocalls"; "Automatic Telephone Dialers" and "Prerecorded Voice Calls," are in

direct violation of the TCPA - Telephone Consumer Protection Act 47 U.S.C. § 227 and the ACT.

78) The Defendant, Ethos, agents, sub-agents and marketers further attempted to conceal their identities by delivering robocalls that fail to accurately identify the Defendant, Ethos, agents, sub-agents and marketers.

79) It is difficult for a consumer to tell what phone calls are "regular," legitimate calls, which calls are telemarketing and what calls are out outright fraud. Upon information and belief, the Plaintiff received other calls from or on behalf of the Defendants, American – Amicable; Transamerica and Omaha, by the Defendant, Ethos, agents, sub-agents and marketers.

80) The Defendants, American – Amicable; Transamerica and Omaha, Complete Business Model is to have its agents, sub-agents and marketers generate sales derived through autodialed and prerecorded calls to consumers' cellular telephone numbers without the called parties consent or acquiescence.

## Facts Supporting Causes Of Action

81) The Plaintiff's Phone Number 312.590.8028 is assigned to a Cellular Telephone for Service.

82) The Plaintiff first registered his cellular phone number 312.590.8028 on the National Do Not Call Registry in May of 2018 and the Plaintiff recently renewed the registration in March of 2021. The number was registered more than thirty (30) days before the Defendant, Ethos, placed the calls alleged in this Complaint.

83) At all times relevant, the Plaintiff, was the sole subscriber, owner and operator of the cellular phone number ending in 8028. The Plaintiff was issued the phone number ending in 8028 in April of 2018 and has maintained that phone number, exclusively, without interruption, since April 2018.

84) The Plaintiff Did Not provide the Defendant, Ethos, prior express consent to call Plaintiff's Number using an automatic telephone dialing system, an artificial voice, or a prerecorded voice.

85) The Plaintiff did not have an established business relationship with Defendant before the calls alleged in this Complaint.

86) Beginning on or about 28 July 2026, the Defendant, Ethos, initiated, or caused others to initiate, telemarketing calls to the Plaintiff's Cellular Telephone Number.

87) The Plaintiff believes the agents, sub-agents or marketers of the Defendant, Ethos, made at least twelve (12) telemarketing calls to the Plaintiff's Cellular Telephone Number between 28 July 2026 and 11 September 2026.

88) The Plaintiff, on information and belief, states the Defendant, Ethos, used an automatic telephone dialing system to store or produce telephone numbers and to dial those numbers.

89) The Plaintiff, on information and belief, states the Defendant, Ethos, used equipment with the capacity to store or produce telephone numbers using a random or sequential number generator and to dial those numbers.

90) The Plaintiff, on information and belief, states on one or more occasions, Defendant, Ethos, delivered its telemarketing message through an artificial or prerecorded voice.

91) The Plaintiff, on information and belief, states on one or more occasions, the Defendant, Ethos, agents, sub-agents and marketers displayed caller-identification information that did not accurately identify the telephone number from which the call originated.

92) The Defendant, Ethos, agents, sub-agents and marketers displayed caller-identification information that caused Plaintiff to believe that the call originated from a different person, entity, location, or telephone number than the actual caller.

93) The agents, sub-agents and marketers acted pursuant to a valid agency theory - actual authority, apparent authority, ratification. The actual authority is because the Defendants, American – Amicable; Transamerica and Omaha, have and maintained control over the timing, quantity and geographic location of the agents, sub-agents and marketers unauthorized robocalls.

94) The Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents and marketers have actual authority. A principal/agent relationship exists. The Defendants, American – Amicable; Transamerica and Omaha, controlled and had the right to control the agents, sub-agents and marketer's conduct. The conduct of the agents, sub-agents and marketers fell within the scope of the agency.

95) The Defendants, American – Amicable; Transamerica and Omaha, sells its Life Insurance products directly to consumers, and also partners with authorized third-party providers.

96) The Defendant, American – Amicable; Transamerica and Omaha, compensates the third-party provider, the Defendant, Ethos, for each Life Insurance product customer

that agrees to become a customer of the Defendants, American – Amicable; Transamerica and Omaha. The Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents and marketers use whatever method is necessary to convince the called party to agree to purchase the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance products. Several of these methods used are illegal under the TCPA and the ACT.

97) The Defendants, American – Amicable; Transamerica and Omaha, are responsible for the conduct of its agents, vendors, contractors, and telemarketing service providers that made calls on Defendant's behalf, because those persons acted with actual or apparent authority and for Defendant's benefit.

98) The Defendants, American – Amicable; Transamerica and Omaha, also exercise control over these third-party providers by retaining the right to discipline and terminate these relationships when an agent, sub-agent or marketer veers from the phone-script or when the third party violates the Telephone Consumer Protection Act.

99) The Defendant, Ethos, engaged in something referred to in the telemarketing industry as "Spoofing"

> Spoofing is when a caller utilizes an electronic device to deliberately falsify the information transmitted to the calls recipient's caller ID display to disguise the caller's identity. The individuals who utilize these "Spoofing" devices use them to falsify the phone number from which they are calling in hope of getting the recipient of the call to answer the call. The recipient's caller ID is made to appear that the

> call is coming from a legitimate business or government agency or other trusted source.

100) The Defendants, American – Amicable; Transamerica and Omaha, third-party providers utilized a device to "Spoof" the phone number that was being used to contact consumers. The Defendant, Ethos, used a Spoofing device when calling the Plaintiff and "Spoofed" the Phone Number to lead the Plaintiff to believe he was being called by a local number, perhaps a friend or acquaintance.

101) These calls were made in an attempt to sell the Plaintiff, the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance products.

102) The Defendant, Ethos, agents, sub-agents or marketers engaged in something referred to in the telemarketing industry as "Neighborhood Spoofing"

> Neighborhood Spoofing or Neighbor Spoofing is when callers use an electronic device to deliberately transmit a reliable-looking phone number to the recipient's caller ID to disguise the caller's identity. The phone number might have a prefix with the call recipient's area code or look like it belongs to a local business or even someone the calls recipient may know. Callers use various techniques to disguise themselves behind legitimate numbers. They can also rotate their numbers to avoid being blocked or reported. The idea is that people typically answer phone numbers from the area they live in or that they recognize. These illegal actions mean the caller has a better chance of getting their phone call answered and someone on the line.

103) The Plaintiff, prior to receiving the Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents or marketers phone calls, was not aware of what or who

the Defendants, American – Amicable; Transamerica and Omaha, were or why the Plaintiff would have different entities calling him. The Plaintiff was confused on the solicitation calls by the Defendants, Ethos and Ryan Conrad, often questioning the representative as to why he was calling the Plaintiff and, on whose behalf, he was calling the Plaintiff.

104) The Plaintiff, after speaking with the Defendants, Ethos; Ryan Conrad and Brian Cooper, agents, sub-agents or marketers, discovered that it was trying to solicit the Plaintiff to become a customer of the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance products.

105) The Plaintiff is unaware as to how the Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents or marketers obtained his information, as he was not interested in purchasing Life Insurance products or acquiring any of the Defendants, American – Amicable; Transamerica and Omaha, Life Insurance products.

106) The Plaintiff was contacted on his cellular telephone number, 312.590.8028, by the Defendant, Ethos, agents, sub-agents or marketers on Friday, 11 September 2026 at 7:37 p.m. CST, from a 'Spoofed' number of 520.222.7301; The call lasted one hour, fourteen minutes and thirty-two seconds (1:14:32).

107) The Call began with a Recorded Phone Message.

108) The Call continued with a live agent, "Ms. Nancy," who stated "This is American Amicable."

> "This call is about your whole life insurance policy, and we are just updating your policy by giving you some more discounts. You just need to verify some of your details now on the file that you already have in front of me Okay."

109) The Call continued with the live agent, "Ms. Nancy," asking: "Regarding the Plaintiff's Health and Medical History"

110) The Plaintiff is unaware as to how the Defendant, American – Amicable, agents, sub-agents or marketers obtained his information, as he is/was not interested in purchasing a Final Expense Life Insurance product or acquiring the Defendant's American – Amicable; Transamerica and Omaha, Life Insurance products.

111) The Plaintiff, who suffers from a disability, was berated and harassed by the Defendants; Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper) and Jane Doe I, (a.k.a. Ms. Nancy) the agents, sub-agents or marketers of the Defendant's American – Amicable; Transamerica and Omaha, during the phone call.

112) The Plaintiff, who suffers from a disability, had the Defendants; Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper) and Jane Doe I, (a.k.a. Ms. Nancy) the agents, sub-agents or marketers of the Defendant's American – Amicable; Transamerica and Omaha try desperately to charge the Plaintiff's Bank Account

numerous times for varying amounts. Amounts far in excess of what Life Insurance products routinely cost.

## Causes Of Action

## Count One

### Violating the National Do Not Call Registry

113) The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

114) The Plaintiff registered his phone number on the National Do Not Call Registry in May of 2018 and recently renewed the registration in March of 2021.

115) The TCPA prohibits a person from making a nonemergency call to a cellular telephone number using an automatic telephone dialing system without the prior express consent of the called party. 47 USCS § 227 (2019).

116) The Defendant; Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) agents, sub-agents and marketers violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers whose telephone numbers were listed on the National Do Not Call Registry. One such subscriber who was listed on the National Do Not Call Registry is the Plaintiff.

117) The calls were not made for an emergency purpose.

118) The Plaintiff did not provide the Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), prior express consent to make the calls alleged in this Complaint.

119) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), therefore violated the TCPA by making or causing automated calls to Plaintiff's Number without Plaintiff's prior express consent.

120) The Defendants, American – Amicable; Transamerica and Omaha, hired and contracted with Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), whose agents, sub-agents or marketers' violations are willful, wanton and knowing because the Defendants initiated or caused repeated telemarketing calls to the Plaintiff's Number despite Plaintiff's lack of consent and request that the calls stop.

## Count Two

### Violating the Prohibition against the Use of Artificial or Prerecorded Voices to Cellular Telephone Lines

121) The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

122) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers violated 47 C.F.R § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to cellular telephone lines, including lines, using artificial and prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

123) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of initiating telephone solicitations to cellular telephone lines, including lines using artificial or prerecorded voices to deliver a message relating to Life Insurance products without the prior express written consent of the called party, the Plaintiff. These violations were performed against the Plaintiff without just cause. The Plaintiff did not consent to the, agents, sub-agents or marketers robocalls. The robocalls were not placed in an emergency situation and were not placed for emergency purposes.

124) The Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents or marketers engaged in a pattern or practice of initiating telephone solicitations to cellular telephones.

125) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) made or caused those calls using an automatic telephone dialing system.

126) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) made or caused at least twelve (12) telemarketing calls to Plaintiff's Number within a twelve-month period despite Plaintiff's National Do Not Call Registry registration.

127) The calls were not made for an emergency purpose.

128) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), did not have an established business relationship with Plaintiff that authorized the calls.

129) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), therefore, violated the TCPA and the regulations implementing the National Do Not Call Registry.

130) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers' actions were willful, wanton and knowing because the Defendants continued to make or cause

telemarketing calls after the Plaintiff registered Plaintiff's Number on the National Do Not Call Registry and requested that the Defendants stop calling.

**Count Three**

**Violating The Prohibition of**

**The National Do Not Call Registry**

131) The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

132) The Plaintiff registered Plaintiff's Cellular Telephone Number on the National Do Not Call Registry before the Defendants made the telemarketing calls alleged in this Complaint.

133) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating telephone calls to cellular telephone lines using artificial or prerecorded voices to deliver messages to residents that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

134) The Plaintiff registered Plaintiff's Number on the National Do Not Call Registry before Defendant made the telemarketing calls alleged in this Complaint. The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe

I, (a.k.a. Ms. Nancy) initiated or caused telemarketing calls to the Plaintiff's Number more than thirty days after Plaintiff registered the number on the National Do Not Call Registry.

135) Once the Plaintiff answered the telephone call, the call began with a recorded message, then a live voice came on the phone that started, "I'm with Ethos and based on our records, it shows that you may qualify for a state-regulated final expense insurance plan. That's going to cover 100 % of your funeral, burial, and cremation expense." This misleading statement was made to trick the Plaintiff.

136) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers did not have the Plaintiff's express written permission to make telemarketing calls to Plaintiff's Number.

137) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), did not have an established business relationship with Plaintiff that authorized the calls.

138) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), made or caused at least twelve (12)

telemarketing calls to Plaintiff's Number within a twelve-month period despite Plaintiff's National Do Not Call Registry registration.

139) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), therefore violated the TCPA and the regulations implementing the National Do Not Call Registry.

140) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy), agents, sub-agents or marketers' violations are willful, wanton and knowing.

## Count Four
### Violating the Prohibition against Misleading or Inaccurate Caller Identification Information

141) The Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

142) The Defendants, American – Amicable; Transamerica and Omaha, agents, sub-agents or marketers violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information.

143) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) initiated or caused calls to Plaintiff's Number while displaying caller-identification information that did not accurately identify the calls' originating number.

144) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) used misleading caller-identification information to induce Plaintiff to answer Defendant's telemarketing calls.

145) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) use of misleading caller-identification information was intentional and formed part of Defendant's telemarketing campaign directed at the Plaintiff.

146) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) caller-identification practices contributed to the repeated unwanted calls, interfered with Plaintiff's ability to screen calls, and caused Plaintiff injury.

147) The Defendants, Ethos, John Doe I, (a.k.a. Ryan Conrad), John Doe II, (a.k.a. Brian Cooper), Jane Doe I, (a.k.a. Ms. Nancy) agents, sub-agents or marketers' violations are willful, wanton, knowing and the Plaintiff believes, criminal.

**Request For Relief**

WHEREFORE, Plaintiff, Charles H. Landwer, requests that the Honorable Court enter an order and judgment as follows:

A. Declare that the Defendants, Ethos; John Doe I, (a.k.a. Ryan Conrad); John Doe II, (a.k.a. Brian Cooper); Jane Doe I, (a.k.a. Ms. Nancy); American – Amicable; Transamerica and Omaha, violated the TCPA and applicable regulations as alleged in this Complaint;

B. Awarding of actual, statutory, and if appropriate, treble damages;

C. Increase any statutory damages award to the extent permitted by law based on Defendant's knowing or willful conduct;

D. Enjoin the Defendants, Ethos; John Doe I, (a.k.a. Ryan Conrad); John Doe II, (a.k.a. Brian Cooper); Jane Doe I, (a.k.a. Ms. Nancy); American – Amicable; Transamerica and Omaha and all persons acting on its behalf from making further unlawful automated, prerecorded-voice, National Do Not Call Registry, or misleading caller-identification calls to Plaintiff;

E. Award the Plaintiff costs of suit and any other relief available by law;

F. Award prejudgment and post-judgment interest as permitted by law; and

G. Grant such other and further relief as the Court deems just and proper.

**Jury Demand**

Pursuant to Rule 38(b), Plaintiff hereby demands trial by jury on all claims and issues so triable.

Dated: 21 September 2026

Respectfully submitted,

Charles H. Landwer
Plaintiff, pro se

Charles H. Landwer
27W165 Schick Road
Hanover Park, Illinois
60133-6719
charleslandwer@gmail.com
312.590.8028

mail to:
P.O. Box 91
Streamwood, Illinois
60107-0091